```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


TONY M. TOWNSEND,              )
                               )
          Plaintiff            )
                               )
     v.                        )   Case No. 2:08 cv 328
                               )
CWS, INC.,                     )
                               )
          Defendant            )
```

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 23] filed by the defendant, CWS, Inc., on August 28, 2009. For the following reasons, this motion is **GRANTED**.

### Background

*Pro se* plaintiff Tony M. Townsend, was hired as an employee driver by Cedomir Milicev d/b/a Chuck's Express, Inc. in July 2007. Chuck's Express was an owner-operator that leased trucks to CWS as an independent contractor pursuant to a Contractor and Equipment Agreement. CWS qualified Townsend as a driver pursuant to Department of Transportation (DOT) regulations to ensure that he could legally drive the truck leased to CWS by Chuck's Express. As part of the qualification process, Townsend signed a Driver Acknowledgment of Independent Contractor Status, Duties and Indemnification which informed him that he was not an employee of CWS. Townsend began driving for Chuck's Express on or about August 21, 2007. However, Townsend claims that because he was given an interview and a drug test and completed an application, he was an employee of CWS.

At a later date, Townsend's employment with Chuck's Express ended, and he began driving for Gorgki Krstov Trucking. Krstov also was an owner-operator who leased trucks to CWS as an independent contractor pursuant to a Contractor and Equipment Agreement. In September 2007, Krstov entered into an oral contract with Townsend in which Krstov agreed to pay Townsend to drive his truck. Townsend was paid directly by Krstov. In early March 2008, Townsend stopped showing up for work and was told that he no longer could drive for Krstov. On March 10, 2008, CWS was notified that Townsend had been terminated due to "poor performance" by Krstov.

On March 18, 2008, Townsend contacted CWS and inquired about becoming an owner-operator. Townsend spoke with George Drain, General Manager of CWS, who informed Townsend that there were two routes available, but that all routes were assigned on a first-come, first-served basis. Drain informed Townsend that before he could be assigned a route, he would need to obtain a truck and complete the qualifying process to ensure that he and his truck were qualified to operate pursuant to DOT regulations.

Townsend never obtained a truck that could be leased to CWS. Townsend never applied to be an owner-operator with CWS and did not complete the qualifying process. Further, Townsend never signed a lease agreement with CWS. Townsend claims that Drain promised to hold a route for him and offered him a four (4) year contract. CWS disputes both of these claims. CWS states that each time Townsend inquired about a possible route he was told

2

that routes came available on a first-come, first-served basis. CWS further maintains that at all relevant times they were willing to enter into an owner-operator lease with Townsend, provided that he could obtain a truck and complete the qualifying process.

Townsend never was an employee of CWS, and CWS never provided Townsend with a truck and a driving schedule. CWS never directly compensated Townsend for his services, and never subsidized Townsend's operation of the leased trucks of Chuck's Express or Krstov by supplying fuel, maintenance, or repairs. Townsend's driving was supervised and controlled exclusively by his employers, Chuck's Express and Gorgji Krstov Trucking. Townsend's compensation was paid directly by his employers. CWS did not exercise any control over Townsend's performance of his duties as assigned by his employers. In his deposition, Townsend admitted that he was an employee of Gorgji Krstov Trucking, not CWS. Townsend further admitted in his deposition that had he entered into an owner-operator agreement with CWS, he would have been an independent contractor and not an employee of CWS.

Townsend filed a charge of discrimination with the EEOC alleging racial discrimination and was issued a Dismissal and Notice of Rights (Right to Sue Letter) on October 7, 2008. On November 7, 2008, Townsend filed his Employment Discrimination Complaint alleging race discrimination by CWS. Townsend's Complaint is very general in its terms, and it is unclear the specific form of race discrimination that Townsend alleges, whether a basic employment discrimination or a disparate treat-

ment claim for CWS' refusal to hire or assign a route to Townsend as an owner-operator.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); ***Williams v. Excel Foundry & Machine, Inc.***, 489 F.3d 309, 310 (7th Cir. 2007); ***Treadwell v. Office of the Illinois Secretary of State***, 455 F.3d 778, 781 (7th Cir. 2006); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn

from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also* ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999) (same proposition); ***Plair v. E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997)(same); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990) (same).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson,*** 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Scott v. Harris***, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

5

adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

"As a *pro se* litigant, [a] [p]laintiff is permitted a more lenient standard . . . than that imposed on a practicing attorney." *Cintron v. St. Gobain Abbrassives, Inc.*, 2004 WL 3142556 *1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that *pro se* litigants face special challenges that litigants represented by counsel do not, *pro se* litigants are not excused from following procedural rules simply because the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers." *Lee v. Wal-Mart Stores*, 1994 WL 899240, *1 (N.D. Ind. Apr. 12, 1994). The court has

> never suggested that procedural rules in ordinary civil litigation would be interpreted so as to excuse mistakes by those who proceed without counsel, [and] [a]s we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."
>
> *Lee*, 1994 WL 899240 at *1 (*quoting* *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)

Keeping this in mind, the court construes the facts before it giving all benefit to the *pro se* litigant's version of the facts

6

and the reasonable inferences that may be made from them.  Because of this more lenient standard, the court construes Townsend's Complaint broadly, applying both the analysis for basic employment discrimination as well as a failure to hire analysis.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire . . . or otherwise discriminate against any individual" on account of race.  42 U.S.C. §2000e-2(a)(1).  *See also **Rudin v. Lincoln Land Community College,*** 420 F.3d 712, 719 (7th Cir. 2005) (discussing failure to hire Title VII claim).  The Supreme Court has explained that "the obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race." ***Furnco Const. Corp. v. Waters***, 438 U.S. 567, 579, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978)(emphasis in original).  The plaintiff's claim can survive the defendant's summary judgment motion "either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the ***McDonnell Douglas*** formula."  ***Sheehan v. Daily Racing Form, Inc.***, 104 F.3d 940, 940 (7th Cir. 1997).

> In the failure to hire context, the ***McDonnell Douglas*** test requires [the plaintiff] to show that: (1) [h]e was a member of a protected class; (2) that [h]e was qualified for an open position for which [h]e applied; (3) that [his] application for employment was rejected; and (4) [the defendant] filled the position with someone not of [the plaintiff's] protected class, or left the position open.
>
> ***Blise v. Antaramian***, 409 F.3d 861, 866 (7th Cir. 2005) (*citing **Koszola v. Bd. of Educ. of***

> *City of Chicago,* 385 F.3d 1104, 1110 (7th Cir. 2004)

"After the plaintiff has made out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the employment action." *Stockwell v. City of Harvey,* ___ F.3d ___, 2010 WL 843875, *3 (7th Cir. March 12, 2010). This is a light burden. *Pilditch v. Bd. of Educ. of City of Chicago,* 3 F.3d 1113, 1117 (7th Cir. 1993)(*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-356, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Once the employer has articulated a legitimate, non discriminatory reason for its decision, the presumption of discrimination falls away. *Cianci v. Pettibone Corp.,* 152 F.3d 723, 726 (7th Cir. 1998). The plaintiff then has the burden of producing sufficient evidence to show that reason to be pretextual. *McDonnell Douglas,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If Townsend's Complaint is that CWS failed to hire him as a driver because of his race, he cannot put forth a prima facie case. Although a member of a protected class, Townsend fails to fulfill the second element of the *McDonnell Douglas* scheme: he was not qualified for an open position with CWS. Townsend admittedly did not obtain a truck and did not complete the qualifying process to ensure that he and his truck were qualified to operate pursuant to DOT regulations. His prima facie case for any construed failure to hire claim fails.

As to any claim that CWS discriminated against Townsend as an employee, his employment status must be analyzed. "Independ-

ent contractors are not protected by Title VII." **Knight v. United Farm Bureau Mut. Ins. Co.**, 950 F.2d 377, 380 (7th Cir. 1991). In order to determine if an employer-employee relationship exists, the court must consider the following factors:

> (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits, and (5) the duration of the job.
>
> **Hojnacki v. Klein-Acosta,** 285 F.3d 544, 550 (7th Cir. 2002)

See also **Alexander v. Rush North Shore Medical Center**, 101 F.3d 487, 492 (7th Cir. 1996)(citing **Ost v. West Suburban Travelers Limousine, Inc.**, 88 F.3d 435, 438 (7th Cir. 1996). "Of these factors, the extent of control and supervision of the worker is the most significant in determining the employment status." **Hojnacki**, 285 F.3d at 550 (citing **Alexander**, 101 F.3d at 493).

**Ost** involved a situation similar to the facts surrounding Townsend. The plaintiff owned her own company, Ost Limousine, Ltd., which contracted with the defendant, West Suburban, to serve as Ost's dispatching agency. The plaintiff served as the primary driver of the limousine owned by Ost Limousine, Ltd. The defendant was an airport limousine dispatch service working around the Chicago area. The defendant contracted with outside individuals to provide vehicles and drivers for the services it dispatched. In exchange for this service, the defendant collected a percentage of each fare collected by the drivers. As a

part of the contract signed between the plaintiff and the defendant, the plaintiff was responsible for all fees associated with owning and maintaining her vehicle, including maintenance, insurance, and licenses.  The plaintiff collected her fees directly from customers and never received a paycheck from the defendant.  Furthermore, she was responsible for her own employment taxes.  As part of the contractual agreement, the plaintiff was free to contract with other companies to provide dispatching services, the plaintiff could accept or reject any assignment offered to her, and she was free to set up her own driving routes.  When the plaintiff was rejected for a position as a dispatcher with the company, she brought a Title VII claim alleging gender discrimination.

After reviewing the five factors to determine whether an employer-employee relationship was present, the district court determined that the plaintiff was an independent contractor.  The Seventh Circuit reviewed the lower court's factual determination and reasoned that the manner in which the plaintiff performed her services for the defendant was primarily within her own control. The plaintiff argued that the defendant set the starting and stopping times for her shifts and controlled her earnings by setting the rates that she could charge.  The court held "[t]hese constraints do not, however establish an employer-employee relationship because the details concerning performance of the work remained essentially within the control of the driver."  As a result, the Seventh Circuit affirmed the district court's grant

of summary judgment in favor of the defendant, agreeing that no employment relationship existed.

Townsend's situation is very similar to *Ost*. Like the plaintiff in *Ost*, Townsend worked solely for and as an independent contractor for CWS. Although Townsend disputes this, he signed a Driver Acknowledgment of Independent Contractor Status, Duties and Indemnification after he qualified under the DOT regulations. This document informed Townsend that he was not an employee of CWS. Furthermore, like the plaintiff in *Ost*, Townsend never received a paycheck from CWS, but was paid by Chuck's Express and Krstov. Similarly, CWS never subsidized the cost of the maintenance, repairs, or fuel for the trucks that Townsend drove during his time working for Chuck's Express and Krstov. Furthermore, CWS never exercised any control over Townsend's performance of his duties as assigned by his employers Chuck's Express or Krstov. Finally, Townsend's employer, Krstov, retained the right to terminate his employment, which it did in early March 2008. Throughout his deposition testimony Townsend admitted that he was not an employee of CWS but rather an employee of Krstov.

Because Townsend was an independent contractor and not an employee, he cannot assert a claim against CWS as his employer.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, CWS, Inc., on August 28, 2009, is **GRANTED.**

ENTERED this 29th day of March, 2010.

                                    s/ ANDREW P. RODOVICH
                                       United States Magistrate Judge